STATE OF CONNECTICUT *v.* NICOLE PELLETIER
(AC 25176)

Foti, Dranginis and Flynn, Js.

72

Argued June 1—officially released September 14, 2004

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Christopher L. Morano*, chief state's attorney, and *John J. Russotto, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Nicole Pelletier, appeals from the judgment of conviction, rendered after a jury trial, of

murder as an accessory in violation of General Statutes §§ 53a-54a and 53a-8. On appeal, the defendant claims that the court improperly (1) replaced a juror and (2) admitted certain evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was married to the victim, Olidor Pelletier. Beginning in April, 1989, the defendant engaged in an extramarital affair with a coworker, Jose Rubert. As the affair continued, the defendant began confiding in Rubert about the difficulties she was having with her marriage. Specifically, she told Rubert that her husband frequently abused her, both physically and sexually, but that she did not want to file for divorce because she feared losing her children. It was at that point that the defendant first asked Rubert to murder her husband.

After two unsuccessful plans to murder Olidor Pelletier, the defendant was successful with her third plan. On October 2, 1989, the defendant drove Rubert to a location near her home, gave him a key with instructions to leave it on the refrigerator inside her home and informed him that she had hidden a baseball bat under a sofa. Rubert entered the victim's home, retrieved the baseball bat and waited for the victim to return home. When the victim entered the house, Rubert severely attacked him with the baseball bat. The victim subsequently was hospitalized and died several days later.

The defendant first told the police that she believed that the person responsible for her husband's murder was a black male who had previously attacked the defendant years before. At a point thereafter, however, the defendant told the police that she believed the perpetrator was Rubert. When questioned by the police, Rubert did not inform them about the defendant's involvement in the attack because he was "in love with

[the defendant]." Specifically, Rubert told the police that he was at the victim's home because he wanted to confront the victim about why he was abusing the defendant. Rubert continued his statement by telling the police that after he confronted the victim, the victim attempted to punch him. Rubert recalled that a fight ensued and that he retrieved a baseball bat from outside and attacked the victim with it. Rubert subsequently pleaded guilty to murder and received a sentence of thirty years of incarceration.

In July, 1995, after being incarcerated for approximately five years, Rubert wrote a letter to Warren Maxwell, an assistant state's attorney, as part of a request for a modification of his sentence, informing him that someone else was involved in the murder of Olidor Pelletier and providing the details of the defendant's plan. The letter was forwarded to the Plymouth police department, which investigated the matter further.

A warrant was issued for the defendant's arrest in 1996, but she had since moved to Canada. In 2001, she was extradited from Canada, arrested and charged with murder as an accessory. She subsequently was convicted and sentenced to sixty years of incarceration. This appeal followed. Additional facts and procedural history relevant to the defendant's claims will be set forth as necessary.

I

The defendant first claims that the court improperly dismissed a juror and substituted an alternate juror after a meeting in chambers from which the defendant was absent, but defense counsel was present.[1] Specifi-

---

[1] Although the interview of the dismissed juror and the replacement juror occurred in chambers, the court placed on the record an oral summary of the events that occurred in chambers. Furthermore, the court asked both parties if they agreed with the court's decision to replace the juror, and neither party objected.

cally, the defendant claims that this violated her constitutional rights to due process and confrontation. Because the defendant did not properly preserve the claim at trial, she seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] Under *Golding*, it is the appellant's responsibility to provide a record adequate to review her claim of error. Id. The record here, however, is inadequate, and we therefore cannot review the defendant's claim pursuant to *Golding*. See *State* v. *Carpenter*, 214 Conn. 77, 86–87, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992).[3]

In *Carpenter*, our Supreme Court determined whether a trial court improperly conducted a voir dire of a juror, excused him and replaced him with an alternate juror when the proceedings took place in the presence of defense counsel, but in the absence of the defendant. Id., 86. The court, in attempting to review the claim pursuant to *Golding*, concluded that the record was inadequate for review. Id. Specifically, the court stated

[2] The defendant also requests plain error review of her claim. "[T]o prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . The doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002). The defendant has failed to demonstrate that the court's actions were so obviously erroneous that they affected the fairness and integrity of and public confidence in the judicial proceedings or that failure to grant the requested relief will result in manifest injustice. Accordingly, plain error review is unwarranted.

[3] The defendant also claims that the court improperly replaced a juror by violating her right to a public trial and by violating Practice Book § 42-7, which provides for communication between the judicial authority and the jury. That claim also was not properly preserved at trial and, consequently, the defendant requests *Golding* review. For the reasons set forth in part I, the defendant has not provided this court with an adequate record to review her unpreserved claim.

that "it is impossible to determine whether the defendant was ignorant or informed of the discussions concerning the excused juror, whether he waived his right to be present at the discussions or whether, at the time, he agreed with the decision to excuse the juror and consented to his replacement." Id., 86–87. Here, as in *Carpenter*, the defendant has provided us with a record inadequate to determine whether she was informed by her counsel about the meeting in chambers concerning the dismissed juror and his replacement, whether she waived her right to be present at the meeting, and whether she consented to the court's dismissal of the juror and the selection of the alternate. We therefore do not have a record adequate for review.

The defendant claims, however, that in the stipulation of facts filed with her motion for rectification the parties stipulated that she was not informed of the decision to dismiss the juror and that she did not waive her right to be present prior to the court's action. The defendant, however, misstates the stipulation. The parties did not stipulate, as the defendant suggests, that she was not informed of the juror's dismissal and that she did not waive her rights. Rather, the stipulation stated only that she was not present at the meeting in chambers. That alone does not provide this court with an adequate record because we still need a record adequate to determine whether the defendant was informed by her counsel regarding what had happened at the meeting in chambers, whether the defendant waived her right to be present at the meeting and whether she consented to the decision made therein. In the absence of that information, the record is inadequate for review, and the defendant's claim fails under *Golding*'s first prong.

II

The defendant next claims that the court improperly admitted certain evidence. Specifically, the defendant

argues that the court improperly admitted into evidence (1) testimony concerning her conduct with another man while the victim was hospitalized following the attack, (2) a writing found on her person when she was arrested and (3) testimony concerning the victim's life insurance policy. We do not agree.

We begin by setting forth our standard of review. "It is well established that a trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Spiegelmann*, 81 Conn. App. 441, 448, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004).

Furthermore, when the claimed error is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. See *State* v. *John G.*, 80 Conn. App. 714, 731, 837 A.2d 829 (2004). For an error to be harmful, the defendant must show that it is more probable than not that the court's erroneous action affected the result. See *State* v. *Breton*, 264 Conn. 327, 364, 824 A.2d 778, cert. denied, 540 U.S. 1055, 124 S. Ct. 819, 157 L. Ed. 2d 708 (2003).

A

The defendant first claims that the court improperly admitted testimony concerning her "passionate dance" and "passionate kiss" with another man while the victim was hospitalized following the attack. Specifically, the defendant argues that the court improperly admitted the evidence because it was prejudicial evidence of prior misconduct. We do not agree.

The following additional facts and procedural history are relevant to our resolution of that claim. At trial, Glen Gosselin testified that while the victim was hospitalized after the attack, but before he died, Gosselin observed the defendant at a party where she engaged in a "passionate dance" and a "passionate kiss" with another man. The state sought to introduce the testimony to show the defendant's state of mind and intent and to support its contention that the marriage of the defendant and the victim was "very bad." The defendant objected, arguing that the testimony was prejudicial, and that it was "not probative of whether or not this defendant committed the crimes charged, and it [would mislead] the jury." The court disagreed, concluding that the testimony was relevant to intent, motive and identity. Specifically, the court concluded that the defendant's actions at that party "corroborate the prior testimony concerning the state of the marriage and the motive for her to engage in the murder or to assist in the murder." Furthermore, in its jury charge, the court stated that "[y]ou may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you believe it . . . as it may bear here on the issues of the existence of the defendant's intent, which is a necessary element of the crime charged, the identity of the person who committed the crime, a motive for the commission of the crime or to corroborate crucial prosecution testimony."

On appeal, the defendant claims that the testimony was admitted improperly because it was prejudicial evidence of prior misconduct. We need not decide if the testimony was admitted improperly, however, because even if we assume arguendo that the court ruled improperly, it was harmless error.

The defendant argues that she was harmed by the admission of the testimony because it improperly excited the passions of the jury. Specifically, the defendant argues that the evidence painted a negative picture of her as an adulterer who was " 'celebrating the success of her plan' . . . ." Any such error, as the defendant claims, however, was harmless because, as the defendant concedes, there was already ample evidence of her infidelity. Furthermore, although the testimony arguably may have portrayed the defendant in a negative light as an adulterer, she was not on trial for those activities, but rather for her involvement in her husband's death. Last, any potential harm resulting from the admission of the testimony was minimized by the court's instructions to the jury limiting its use of the testimony.

For all of the foregoing reasons, we conclude that the defendant has not met her burden of proving that any harm resulting from the court's admission of the challenged testimony made it more probable than not that the result was affected. The court, therefore, did not abuse its discretion in admitting the testimony.

B

The defendant next claims that the court improperly admitted into evidence a "written prayer found in [her] possession on her arrest" as evidence of her consciousness of guilt. Specifically, the defendant claims that the evidence was admitted improperly because it did not, either directly or indirectly, reference the crime with which she was charged. We do not agree.

The following additional facts and procedural history are relevant to our resolution of this claim. In July, 2001, after the defendant was arrested and during the booking process, the Plymouth police department found on her person the following writing:[4] "I have

---

[4] The defendant conceded that she is the author of the writing.

acknowledged my sins and my guilt. I kept it secret and my frame was wasted. I have confess my offense to the Lord and you Lord have forgiven my sins, if you Lord note all our offenses Who them O Lord could stand But with you is forgiveness Let me know what is forgiveness as is never were With fairness you rule the people Look deep inside of me Lord my Trouble, pain, suffering. Let me hold your promise a new Life Please God answer my prayer give me my freedom I will Like to take care of my family and help other people in need It redeem the past give meaning to the present and enable us to Look ahead for a good think awaiting us These are your promises God. help me fine my way to you This is my promise to you Lord. Not doing the same mistake again trying hard to go to church every week, at night said my Rosarie on my Knee, Sing and help other in need. God I'm a good Person that made wrong choice and mistake With your help God I could be on the safe path again With you and my family together Amen."

At trial, the state sought to admit that writing as evidence of consciousness of guilt as well as an admission of the defendant. The defendant objected, arguing that the writing was prejudicial because it did not reference a specific incident or specific conduct for which she presumably sought forgiveness. The court disagreed with the defendant and admitted the writing into evidence, concluding that it was relevant to consciousness of guilt and that its probative value was not outweighed by any prejudicial effect.

On appeal, the defendant argues that the evidence was irrelevant because the writing was a "generalized acknowledgement of sin and request for forgiveness," and did not reference the crime with which she was charged. The defendant's argument, however, must fail because the writing need not make a specific reference

to the pending charges. See *State* v. *Reid*, 193 Conn. 646, 655–56, 480 A.2d 463 (1984).

"In a criminal trial, it is relevant to show the conduct of an accused, as well as any statement made by him subsequent to the alleged criminal act, which may fairly be inferred to have been influenced by the criminal act. . . . The state of mind which is characterized as guilty consciousness or consciousness of guilt is strong evidence that the person is indeed guilty . . . and, under proper safeguards . . . is admissible evidence against an accused. . . . Before evidence is allowed to be given, however, the court must also consider whether its prejudicial tendency outweighs its probative value." (Citations omitted; internal quotation marks omitted.) Id.

In *Reid*, the defendant argued that the court improperly admitted into evidence his postarrest telephone conversation in which he was heard saying, "tell Warren to get rid of the stuff and to get the three witnesses" or "get the witnesses lined up." (Internal quotation marks omitted.) Id., 650. Our Supreme Court concluded, despite no specific reference by Reid to the crime with which he was charged, that those statements tended to reflect a "consciousness of guilt" on the defendant's "part by showing an attempt to fabricate an alibi. The statement was admissible to show conduct inconsistent with a claim of innocence . . . ." Id., 656.

Here, the defendant, in the writing, asked for forgiveness for her unspecified conduct in the past. The lack of specificity of what "sin" was committed and at what time that it was committed did not defeat the writing's admissibility. Consequently, the court could still have reasonably concluded that the defendant's writing was conduct inconsistent with a claim of innocence and was influenced by her criminal conduct, notwithstanding the fact that reference was not made to specific

conduct or to a specific incident. Moreover, under the circumstances of this case, the court, considering the context and content of the writing, properly could have concluded that the probative value of the writing was not outweighed by any prejudicial effect.[5] For those reasons, we cannot conclude that the court abused its discretion by admitting the writing into evidence.[6]

### C

Last, the defendant claims that the court improperly admitted testimony concerning the victim's life insurance policy. Specifically, the defendant claims that the evidence was irrelevant because the state did not provide a sufficient foundation leading to the conclusion that her motive for her involvement with the victim's murder was the life insurance proceeds. We do not agree.

The following additional facts and procedural history are relevant to our resolution of that claim. At trial, Alban Saindon, the insurance agent of the defendant and the victim, testified that the defendant and the victim had purchased from him a life insurance policy that insured the victim's life for $115,000 and that the

---

[5] The defendant also claims that the court improperly violated her first amendment right to freedom of religion by admitting "evidence of religious practices" as character evidence. The defendant's claim, however, must fail because the writing was not admitted to prove a particular religious practice, nor was it used to show that the defendant had a particular "religious character." Instead, the writing was used as consciousness of guilt evidence merely to prove that her conduct in making the writing, regardless of its religious form, was inconsistent with a claim of innocence and was influenced by her criminal conduct.

[6] Even if we assume arguendo that the court improperly admitted the writing into evidence, such error, in the context of the entire evidence, was harmless. Because the court's ruling was evidentiary and not constitutional in nature, the defendant bears the burden of demonstrating harm by showing that it is more probable than not that the erroneous action of the court affected the result. *State* v. *Grenier*, 257 Conn. 797, 806–807, 778 A.2d 159 (2001); *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997). The defendant has failed to satisfy her burden of demonstrating harm.

defendant was the beneficiary. Saindon further testified that he first offered them a life insurance policy in 1981, but they did not purchase a policy until 1987, and that the defendant ultimately collected on the policy six weeks after her husband's death.

The defendant objected to the introduction of that testimony on the ground of relevance, arguing that there was no evidence that her motive for murdering her husband was financial gain. The court disagreed, concluding that "there is evidence in the record that [the defendant] had an unhappy marriage, that she was having an affair and that she wanted to get rid of her husband. The jury could infer that she very easily could have gotten a divorce, but she didn't. So, it also can infer that the reason she didn't was because there was [$115,000] insurance policy on his life. So, I think it is relevant to the issue of motive . . . ."

On appeal, the defendant argues that the testimony was inadmissible because the state did not put forth a theory that there was a financial motivation for the murder. Even if we assume arguendo that the state was required to argue that there was a financial motivation for the defendant's action in order to submit the evidence, any error by the court was harmless. We specifically note that the admission of the evidence was harmless for the same reasons given by the defendant as to why the evidence was irrelevant, namely, that the state did not expressly put forth a theory that there was a financial motivation for her actions. The absence of such a theory before the jury minimized any potential harm resulting from the court's action.

Moreover, the additional information provided in connection with Saindon's testimony further minimized any potential harm. Specifically, as the defendant argues, "[n]o evidence of significant financial troubles on the part of the defendant was introduced . . . [n]or

was the policy a recent purchase; the insurance agent testified that the policy had been put in place years before the homicide . . . [n]or was the policy unusual in any way—it is virtually standard for responsible parents to carry life insurance." Consequently, because, as the defendant argues, the life insurance policy and her collection of the proceeds following the victim's death was not a unique or unordinary situation, it is unlikely that the admission of Saindon's testimony harmed her in a way that makes it more probable than not that the result was affected.

For the foregoing reasons, we cannot conclude that the court abused its discretion in admitting into evidence testimony concerning the victim's life insurance policy because any error by the court was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.