# STATE OF CONNECTICUT *v.* JEROME H. BLOOM
## (AC 24915)

Foti, McLachlan and Dupont, Js.

Argued October 15—officially released December 14, 2004

*Jerome H. Bloom,* pro se, the appellant (defendant).

*Melissa L. Streeto,* deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, *Joseph Marcello,* supervisory assistant state's attorney, and *Rosalyn Fleisher,* senior assistant state's attorney, for the appellee (state).

### Opinion

FOTI, J. The pro se defendant, Jerome H. Bloom, appeals from the judgment of conviction, rendered after a trial to the court, of injury to property in violation of § 152-10 A of the Stratford code of ordinances,[1] which prohibits the injuring of property in public recreational areas. On appeal, the defendant claims that (1) the town ordinance is unconstitutionally vague, (2) the evidence was insufficient to support his conviction, (3) the court abused its discretion in excluding from evidence certain photographs and (4) the court abused its discretion in not granting a continuance in order to allow him to obtain a report allegedly prepared by the town of Stratford (town). We affirm the judgment of the trial court.

---

[1] Section 152-10 A of the Stratford code of ordinances provides is relevant part: "No person shall deface, remove, destroy or otherwise injure, in any manner whatsoever, any . . . ornamental lawn within any recreational area."

The court reasonably could have found the following facts. During the afternoon of May 17, 2003, the defendant was prospecting in Boothe Memorial Park in Stratford. The defendant, while walking around the park with a metal detector, periodically would stop to dig holes in the ground with a six to ten inch trowel. While he was digging the holes, park personnel approached the defendant and informed him that he was not permitted to dig in the park. The defendant told the park personnel that he would continue to dig in the park. Subsequently, the park personnel notified the Stratford police of the defendant's actions, and Officer David Mullane responded to the scene. Mullane approached the defendant and informed him that he could not dig in the park and asked him to cease. The defendant refused and Mullane issued the defendant a ticket for violating the town ordinance.

The defendant pleaded not guilty. An evidentiary hearing was held before Magistrate Gerald Frauwirth, who found the defendant guilty of violating the ordinance and imposed a fine of $99. The defendant then filed a claim for a new trial in the Superior Court. Following the trial, the court found the defendant guilty and affirmed the imposition of the $99 fine. This appeal followed.

I

The defendant first claims that § 152-10 A of the Stratford code of ordinances is unconstitutionally vague because it fails to define the term "ornamental lawn." We disagree.

The following facts are relevant to our resolution of this claim. Bessie Burton, a curator and the director of volunteers at Boothe Memorial Park, testified, without objection, that the lawn at the park is considered ornamental. Following the close of the state's case, the defendant moved to have the charge against him dis-

missed because the town ordinance was vague and ambiguous in that it did not define the term "ornamental lawn." In denying the defendant's motion, the court held that the ordinance was "pretty well clear." The court then found that the lawn at Boothe Memorial Park was an "ornamental lawn" in that it was cared for and admired.

The defendant's claim on appeal is that the ordinance is void on its face. The defendant claims that the ordinance is "unconstitutionally vague because the relevant terms are undefined and so ambiguous that it was impossible for him or any 'ordinary' person to shape their conduct so that it complies with the ordinance." Specifically, the defendant argues that because the Stratford code does not define the term "ornamental lawn," the court should have referred to a dictionary to obtain the definition as opposed to relying on the testimony of a witness to determine whether the park's lawn was "ornamental." If the court would have referred to a dictionary, the defendant argues, it would have been "unimaginable" that the town would have permitted members of the public to walk on the lawn if it was ornamental. The defendant also claims that it would have been "unimaginable" that the town would not have posted signs around the park to protect the lawn's ornamental value.

We first identify the legal principles and standard of review that guide our resolution of this claim. "The purpose of the vagueness doctrine is twofold. The doctrine requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement. The United States Supreme Court has set forth standards for evaluating vagueness. First, because we assume that [a person] is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is

prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. . . . [A] law forbidding or requiring conduct in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. . . .

"Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. . . . Therefore, a legislature [must] establish minimal guidelines to govern law enforcement. . . .

"These standards should not . . . be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. . . . The Court has . . . expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the [defendant] that his conduct is proscribed. . . . [P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." (Internal quotation marks omitted.) *State* v. *DeLoreto*, 265 Conn. 145, 164–65, 827 A.2d 671 (2003).

"As a threshold matter, it is necessary to discuss the applicable standard of review. A statute is not void

for vagueness unless it clearly and unequivocally is unconstitutional, [and a court makes] every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning. . . .

"The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . . To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the statute]. . . . Thus, outside the context of the first amendment, in order to challenge successfully the facial validity of a statute, a party is required to demonstrate as a threshold matter that the statute may not be applied constitutionally to the facts of [the] case." (Citation omitted; internal quotation marks omitted.) *Rocque* v. *Farricielli*, 269 Conn. 187, 204–205, 848 A.2d 1206 (2004).

The defendant's claim does not implicate his first amendment rights. Accordingly, before we will address the defendant's facial challenge to the ordinance, the defendant must first establish that the ordinance cannot be constitutionally applied to the facts of the present case. "[I]n order to challenge successfully, on due process grounds, the vagueness of [any] statute as applied to [the] particular facts [of his case] . . . [the defendant] must prove that the policies advanced by the void for vagueness doctrine were violated in his case. Specifically, [he] must show . . . (1) [that] the statute does not provide fair warning that it applies to the conduct at issue, or (2) that he was the victim of arbitrary enforcement practices." (Internal quotation marks omitted.) Id., 206. The defendant does not claim that he was the victim of arbitrary enforcement practices. Therefore, we limit our review to whether the ordinance provided him with fair warning that digging holes in the lawn of Boothe Memorial Park was prohibited.

"The proper test for determining if a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . ." (Citation omitted.) *State* v. *Crudup*, 81 Conn. App. 248, 263–64, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004). When we apply these principles to the facts of the present case, "our fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited" under the ordinance. (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 557, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). We conclude that a person of ordinary intelligence would be on fair notice that digging holes in the lawn at Boothe Memorial Park was prohibited under the ordinance.

Section 152-10 A of the Stratford code of ordinances provides in relevant part: "No person shall deface, remove, destroy or otherwise injure, in any manner whatsoever, any . . . ornamental lawn within any recreational area." The defendant does not contest that Boothe Memorial Park was a recreational area. Rather, the defendant's claim is limited to whether the lawn at the park was ornamental.

Nowhere in the Stratford code is the phrase "ornamental lawn" defined. "The lack of an express definition does not, in and of itself, render a statute void for vagueness." *State* v. *Jacob*, 69 Conn. App. 666, 674, 798 A.2d 974 (2002). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994).

The American Heritage Dictionary defines "ornamental" as "[o]f, pertaining to, or serving as an ornament." American Heritage Dictionary (2d College Ed. 1982) An "ornament" is something that decorates or adorns. Id. Therefore, an "ornamental lawn" is a lawn that decorates or adorns. We conclude that a reasonable person would be on notice that the lawn at Boothe Memorial Park was ornamental. The lawn at Boothe Memorial Park contributes to the beauty of the park. The court heard testimony that the lawn was cared for and maintained. The lawn was "kept, mowed, manicured [and] watered." The mere fact that the town permitted members of the public to use the lawn for certain activities does not take away from its ornamental value. The ornamental value of a manicured and maintained lawn is not diminished by members of the public walking, running or picnicking on the lawn. Accordingly, the defendant has failed to establish that the term "ornamental lawn," as used in the ordinance, was unconstitu-

tionally vague.[2] We therefore conclude that a person of ordinary intelligence would be on fair notice that digging holes in the lawn at Boothe Memorial Park was prohibited under the ordinance.

II

The defendant next claims that the evidence was insufficient to support his conviction. We disagree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 246, 856 A.2d 917 (2004).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant

---

[2] The defendant places great emphasis on the absence of signs at the park prohibiting the public from utilizing the lawn because, the defendant contends, if the lawn was truly ornamental, the town would not allow the public to use it. The defendant's argument is misplaced. At the entrance of the park, the public is informed of certain actions that are prohibited in the park and that they are to respect the park. Although the defendant correctly notes that the sign does not indicate that members of the public are prohibited from digging holes in the park's lawn, a town is not required to provide an exhaustive list of all activities that are prohibited. *Packer* v. *Board of Education*, 246 Conn. 89, 101, 717 A.2d 117 (1998). The mere fact that the town did not have a sign at the park stating that individuals are not allowed to dig holes in the park's lawn does not necessitate a finding that the lawn was not ornamental.

question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Barretta*, 82 Conn. App. 684, 688, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004).

The crux of the defendant's claim is that because there was no evidence presented that the town repaired the lawn in the area that he dug, the state failed to prove that he injured the property. It is the defendant's claim that "one can infer if there were no repairs done, then there was no damage to the grass and, therefore, [he] did not commit injury to [the] property." The defendant misconstrues the ordinance. For the court to have found that the defendant violated the ordinance, the state was required to prove beyond a reasonable doubt only that the defendant injured the lawn. The state was not required to elicit any testimony regarding any remedial measures that the town took in order to repair the lawn.

From the evidence credited by the court, there was sufficient evidence for the court to have found that the defendant injured the park's lawn by digging holes with a trowel. In its decision, the court credited the testimony of Burton and Fehmi Gashi, a groundskeeper at Boothe Memorial Park. "The weight to be given the evidence and the credibility of witnesses . . . are solely within the determination of the trier of fact." (Internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 82, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003). Both Burton and Gashi testified that they observed the defendant digging holes in the park's lawn. Gashi further testified that the defendant's digging damaged the lawn and killed the grass. Gashi also testified that the damage created by the digging did not repair

itself; it required the use of top soil, seed and fertilizer to repair it.

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence to establish that the defendant injured the park's lawn.

### III

The defendant next claims that the court abused its discretion in excluding from evidence certain photographs depicting the park's lawn. The defendant contends that the photographs should have been admitted into evidence because they were relevant to establishing that the lawn at Boothe Memorial Park was not ornamental. We disagree.

The following facts and procedural history are relevant to our resolution of this claim. Burton testified on cross-examination that the lawn at Boothe Memorial Park was ornamental. The defendant then attempted to introduce into evidence twenty-five photographs of the park's lawn that he took on October 17, 2003. The court had the photographs marked for identification. The court, however, would not permit the photographs to be admitted into evidence as full exhibits because they were irrelevant, having been taken five months after the defendant was issued the citation for injuring the park's lawn. The defendant subsequently attempted to have the photographs admitted into evidence during the testimony of Mullane. The court again denied the defendant's request.

We begin by setting forth our standard of review. "It is well established that a trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable

presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Pelletier*, 85 Conn. App. 71, 77, 856 A.2d 435 (2004).

The defendant first claims that the court improperly excluded the photographs on the basis of an "unfounded and baseless definition of an ornamental lawn." There is no merit to this claim. The court's stated reason for not admitting the photographs into evidence was that they were irrelevant because they did not depict the lawn as it was on the date the citation was issued. There is no indication in the record that the court's decision to exclude the photographs was based on how it defined the term "ornamental lawn."

The defendant also claims that the photographs should not have been excluded because "it is irrelevant when [they] were taken." In ruling on the defendant's request to admit the photographs into evidence, the court held that they were irrelevant to the present case because they were not a fair and accurate representation of the lawn on the day the defendant was issued the citation. The court ruled that the appearance of the lawn when the photographs were taken, on October 17, 2003, was not relevant to how the lawn appeared five months earlier when the citation was issued.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 65, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004).

We agree with the court that the photographs were not relevant to a determination of whether the lawn at

Boothe Memorial Park was ornamental on the date the citation was issued. As the court correctly noted, "a lawn in May that is a nicely mowed lawn and . . . a lawn in October, where you have leaves on it which have not been raked up, are two different things." Under the facts of this case, photographs taken in October, 2003, during the fall, were not relevant to the condition of the lawn on May 17, 2003. The photographs were not a fair and accurate representation of the park's lawn as it appeared when the defendant was issued the citation. Accordingly, we conclude that the court did not abuse its discretion in prohibiting the defendant from admitting the photographs into evidence.

## IV

The defendant last claims that the court abused its discretion in not granting a continuance in order to allow him the opportunity to obtain a report allegedly prepared by the town. We disagree.

The following facts and procedural history are relevant to our resolution of this claim. While being cross-examined by the defendant, Gashi testified that he reported the incident to the superintendent of the town's parks department, who subsequently inspected the site. He further testified that while inspecting the site, the superintendent wrote "something" down. The defendant did not question Gashi regarding the contents of the writing.

Following the close of evidence, the defendant asked the court for a continuance "to obtain a report from the supervisor who investigated the alleged injury to the property." The defendant argued to the court that "the report may make the determination as to whether or not the supervisor of the . . . parks department deemed that any actual injury to the grounds had occurred." The court denied the defendant's motion for a continuance because Burton and Gashi both testified

that the defendant was digging holes in the park's lawn; therefore the contents of the report would have been "repetitious and redundant." The court also noted that the defendant could have subpoenaed the superintendent of the parks department if he wanted that person to testify.

We first set forth the applicable standard of review. "We previously have recognized that [t]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives. . . .

"To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hurdle,* 85 Conn. App. 128, 134–35, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004).

Our Supreme Court has "articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay;

the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . .

"In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis. . . . In connection with this inquiry into harmless error, [w]e distinguish between two types of cases: those in which a constitutional right has been implicated by a denial of a continuance, and those of a nonconstitutional nature. . . . Although prejudice is presumed in instances in which a defendant has suffered a deprivation of a constitutional right, in order to establish reversible error in nonconstitutional claims, the defendant must prove both an abuse of discretion and harm . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 801–802, 835 A.2d 977 (2003). In this case, because the defendant does not claim that he has been deprived of a constitutional right, he must show that the court abused its discretion in denying his request for a continuance *and* that he was harmed by the denial. *State* v. *Hamilton*, 228 Conn. 234, 244, 636 A.2d 760 (1994).

We need not decide whether the court's denial of the defendant's request for a continuance was improper because the defendant has failed to demonstrate any prejudice flowing from the denial. *State* v. *Coney*, supra, 266 Conn. 803. In his brief to this court, the defendant's claim of prejudice is relegated to a single sentence: "Thus, the defendant was severely prejudiced, in that he could have been exonerated by the report's findings, and by not being allowed to obtain and enter as an exhibit a copy of this report." We initially note that the

defendant's questioning of Gashi does not establish that a report was actually made. Gashi's testimony simply stated that when the superintendent of the parks department inspected the area where the defendant had been digging the holes, the superintendent wrote "something" down. There is no indication in the record before us that what the superintendent wrote was a report, nor is there any indication that what the superintendent wrote were his findings as to whether the defendant's digging injured the park's lawn. Furthermore, while cross-examining Gashi, the defendant did not attempt to elicit any testimony regarding the contents of what the superintendent wrote, nor did the defendant request the continuance when he first learned that the superintendent had written something while surveying the area where the defendant was digging. Instead, the defendant waited until after the close of evidence. The defendant has been unable to demonstrate how the superintendent's "report" would have been helpful to his case. Because he failed to make more than a speculative showing of prejudice, the defendant has necessarily failed to demonstrate that the trial court abused its discretion in denying his motion for a continuance. See *State* v. *Aillon*, 202 Conn. 385, 396, 521 A.2d 555 (1987).

Furthermore, the uncontradicted testimony at trial was that the defendant was digging holes in the lawn at Boothe Memorial Park. According to Gashi, such actions caused injury to the lawn. Accordingly, under the facts of this case, the defendant has failed to establish that he was harmed by the court's denial of his request for a continuance.

The judgment is affirmed.

In this opinion the other judges concurred.