******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES E. WALKER
(SC 19281)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued September 14—officially released November 24, 2015*

*Timothy H. Everett*, assigned counsel, with whom were *Stephen Capracotta*, certified legal intern, and, on the brief, *Matthew Eagan*, certified legal intern, for the appellant (defendant).

*Nancy L. Walker*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey M. Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. The present case affords us an opportunity to clarify the scope of a recent amendment to our rules of practice, under which appellate review of an issue is not forfeited due to an inadequate record if the sole obstacle to review is a party's failure to obtain an articulation from the trial court. See Practice Book § 61-10 (b). In his certified appeal, the defendant, James E. Walker, challenges the Appellate Court's determination that the absence of an adequate record regarding an alleged in chambers inquiry into defense counsel's possible conflict of interest precluded review of the defendant's unpreserved claim that his exclusion from that proceeding violated his constitutional right to be present at all critical stages of the prosecution. See *State* v. *Walker*, 147 Conn. App. 1, 15, 82 A.3d 630 (2013). We conclude that the deficiency in the present case required a rectification of the record, not an articulation. We further conclude that the forfeiture exception under § 61-10 (b) is neither applicable to a deficient record due to the failure to seek a rectification nor applicable to unpreserved claims. Accordingly, we affirm the Appellate Court's judgment.

The record reveals the following undisputed facts. In connection with the nonfatal shooting of two persons, the defendant was charged with two counts of assault in the first degree by means of the discharge of a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8 and one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (5). A key witness for the state, a jailhouse informant named James Dickerson, was an acquaintance of the defendant and was incarcerated at the same facility as the defendant. At trial, Dickerson testified that the defendant had admitted to him his involvement in the shooting and his motive for the shooting. Dickerson denied that he had received any promises in exchange for his testimony but acknowledged that he hoped to get favorable treatment from the state on pending narcotics charges.

The connection between Dickerson's testimony and the issue on appeal arose during jury selection, when the following colloquy occurred:

"The Court: Good morning, everybody. We are back to jury selection in [the present case]. *The attorneys have brought a matter to the court's attention this morning which should be put on the record.* [Assistant State's Attorney Stacey] Haupt [the prosecutor], I don't know if you want to go first or—

"[The Prosecutor]: . . . It was brought to my attention late Friday by [Assistant State's] Attorney Jack Doyle [regarding] the [plea offer] between . . . Dickerson and the state's attorney's office. I asked Attorney Doyle to write a memo about how exactly that went

down and what promises had been made to [Dickerson] and in looking at his file attempting to prepare the memo, Attorney Doyle realized that [defense counsel in the present case] . . . had spoken to [Dickerson] at the request of Attorney Jamie Alosi to try to talk to him about taking some type of deal. However, it was prior to [Dickerson] cooperating in this case. I don't believe that deal came to fruition, but I just thought it should be brought to the court's attention that . . . [defense counsel] in some respect had conversations with one of the state's witnesses.

"The Court: Let me flush that out a bit. Apparently, [Dickerson], and it's already a matter of knowledge and public [record] in this case, is going to testify against [the defendant]. [Dickerson], and I think you put this on the record earlier, and if not, it should be. [Dickerson] was on trial in front of this court, represented by Attorney Alosi. At some point, he entered a plea upstairs, and I had nothing to do with the plea. I had nothing to do with the sentencing. My involvement was picking a jury up to the point where the matter was resolved. Apparently, [defense counsel], you can add to that factual situation. Listen up, Mr. Walker, I just want to make sure you understand this.

"[Defense Counsel]: [Dickerson] was brought in to begin jury selection in a matter which he eventually pled guilty to and is seeking to have consideration for based on his testimony or anticipated testimony in this case. I happen[ed] to be on the sixth floor. He was in the bullpen upstairs with his attorney, and his attorney, who I know, had told me about the case he was proceeding to trial on." (Emphasis added.)

Defense counsel then went on to explain that Dickerson's attorney had told him about the evidence against Dickerson relating to the sale of narcotics, which included a videotape of the purported transaction and a still photograph from that videotape that appeared to show Dickerson making the sale, and the fact that the state had offered Dickerson a plea agreement. Because defense counsel knew Dickerson, he was asked, or may have volunteered, to speak with Dickerson about the sentence that could be imposed in light of the evidence and Dickerson's past history. In summarizing the discussion that ensued, defense counsel noted that Dickerson had told him about the plea offer as well as "what the plea agreement was that he could accept short of going to trial." Defense counsel then explained: "I said, in my opinion, the evidence was substantial. Then again, I didn't spend more than five or six minutes with him, nor did I, other than the layout, which he probably already heard from his attorney, have anything that would impact on [the] decision he made. Then he proceeded to come down here and begin jury selection with Your Honor.

"Subsequent to that, it would appear, and I didn't

know until, let's say, a month to six weeks after that he had given that statement because it wasn't being handled by [the prosecutor] at that time, this case. . . .

"My client [the defendant] was incarcerated, having not made bond, and, at some point . . . I became aware that Dickerson had made a statement. As soon as I became aware, I asked [the prosecutor] to send me a copy of that statement. I spoke to [Assistant State's Attorney] Doyle. . . . I spoke to them about the parameters of the new plea agreement that [Dickerson] had entered into based on his cooperation and I was told essentially what happened. I was given a copy of the statement, and that's where we are today. My client [the defendant] is aware I had a limited interaction with [Dickerson] prior to him giving inculpatory evidence or [an] anticipated statement that inculpates him, and I explained to [the defendant] that this in no way would impede my cross-examination of [Dickerson]. I don't think that that conversation is probably relevant to the deal he eventually entered into, and I would probably not, in my cross-examination, unless it came out that we knew each other, but we had known each other prior to me speaking to him up in court, and I wouldn't get into any details of the conversation. I don't think that would hamper my cross-examination of him at all. [The defendant] has indicated to me that he wants me to continue to represent him.

"The Court: You heard that, Mr. Walker? You're comfortable with that?

"The Defendant: Yes, yes.

"The Court: Let me tell you what I'm concerned about to protect your rights. As your lawyer, [defense counsel] owes you a duty of undivided loyalty. He can't represent two people at the same time that have any kind of conflict. From what I've heard here today, I haven't seen any. Whatever he did with [Dickerson] was unrelated to whatever deal [Dickerson] now has going, and he can go after that deal hand and claw, and there's nothing that I can see in his prior contact with [Dickerson] that is even relevant to the situation that developed after he spoke to [defense counsel]. I don't see any conflict. I don't see any violation of the law by [defense counsel], and I want to make sure you're comfortable with it so we can get on with the trial, and you've got to let me know. Are you okay with it?

"The Defendant: Yes.

"The Court: Good, all right, then we'll pick it up. Let's bring the panel out. Thank you."

During his cross-examination of Dickerson, defense counsel did not attempt to elicit information about any matter discussed at their prior meeting. At the conclusion of the trial, the jury returned a verdict finding the defendant not guilty of assault in the first degree, as either principal or accessory, but guilty of conspiracy

to commit assault in the first degree. The trial court rendered judgment in accordance with the verdict, from which the defendant appealed.

Among the issues raised before the Appellate Court, the defendant claimed that he was entitled to a new trial because his constitutional right to be present at all critical stages of the prosecution had been violated. *State* v. *Walker*, supra, 147 Conn. App. 3. The factual basis for this claim was the defendant's alleged exclusion from an in chambers discussion regarding defense counsel's possible conflict of interest. Id., 7–8. Conceding that this issue had not been raised at trial, the defendant sought review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). *State* v. *Walker*, supra, 8; see *State* v. *Golding*, supra, 239–40 (setting forth four factors to obtain review and prevail upon unpreserved claim of constitutional error).

The Appellate Court determined that the record was inadequate to review this claim and affirmed the judgment of conviction. Id., 15–16. The court reasoned that the record revealed "no information as to whether a meeting occurred in chambers or whether there was a discussion in court off the record in the presence or absence of the defendant, whether or how counsel alerted the court clerk's office that something needed to be put on the record that morning, or whether the attorneys did something else in the presence or absence of the defendant to alert the court that there was an issue that needed to be put on the record." Id., 15. The court held that it was incumbent upon the defendant under such circumstances to request a hearing in order to establish the factual predicate of his claim on the record, and that his failure to do so precluded appellate review. Id.

This court thereafter granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly determine that the defendant could not prevail on his unpreserved claim that the trial court improperly excluded him from a critical stage of the proceeding when trial counsel's possible conflict of interest was discussed, because of the failure of the defendant to seek an articulation, resulting in an inadequate record on appeal?" *State* v. *Walker*, 311 Conn. 919, 919–20, 85 A.3d 654 (2014). According to the defendant, there are two flaws in the Appellate Court's determination: (1) the record is adequate because, "understood in context," the colloquy demonstrates the factual basis for his claim—that the trial court consulted with counsel out of the defendant's presence regarding defense counsel's conflict of interest; and (2) to the extent that an articulation is necessary to dispel any ambiguity as to that matter, Practice Book § 61-10 (b) required the Appellate Court to order one rather than deny review solely on that basis.

Before turning to the merits of these contentions, we

observe that the certified question does not accurately reflect the issue before us. The Appellate Court never determined that an *articulation* would cure the record deficiencies that it had identified. Therefore, we must reframe the certified question. See *State* v. *Wang*, 312 Conn. 222, 225–26 n.3, 92 A.3d 220 (2014) (reformulating certified question to conform to issue actually presented); *State* v. *Ouellette*, 295 Conn. 173, 184, 989 A.2d 1048 (2010) (same). Properly framed, the question is whether the Appellate Court properly determined that the defendant could not prevail on his unpreserved claim because of his failure to *augment* the record with the facts related to the alleged in chambers discussion. We answer that question in the affirmative.

We begin by acknowledging that the defendant's claim, broadly stated, is of constitutional magnitude and therefore potentially amenable to *Golding* review, despite not being raised at trial. "[A] criminal defendant has a constitutional right to be present at all critical stages of his or her prosecution. . . . Although the constitutional right to be present is rooted to a large extent in the confrontation clause of the sixth amendment, courts have recognized that this right is protected by the due process clause in situations [in which] the defendant is not actually confronting witnesses or evidence against him. . . . In judging whether a particular segment of a criminal proceeding constitutes a critical stage of a defendant's prosecution, courts have evaluated the extent to which a fair and just hearing would be thwarted by [the defendant's] absence or whether his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. *Kentucky* v. *Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987)." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, 271 Conn. 724, 732, 859 A.2d 898 (2004).

Accordingly, "although an in camera inquiry regarding a potential conflict of interest may constitute a critical stage of a prosecution . . . it does not follow that all [in chambers] discussions constitute a critical stage of the prosecution. . . . [Determining] whether a particular in camera proceeding qualifies as a critical stage of the prosecution *is a necessarily fact intensive inquiry. Thus, it is imperative that the record reveal the scope of discussion that transpired.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Chambers*, 296 Conn. 397, 412–13, 994 A.2d 1248 (2010); *State* v. *Bonner*, 290 Conn. 468, 492, 964 A.2d 73 (2009). When "we are left to speculate as to whether the [in camera] conversation[s] consisted of the [trial] court and counsel conducting an extensive discussion as to [the] potential conflict[s] of interest at one end of the spectrum or, at the opposite end, a brief comment to the court that there was a matter that needed to be placed on the record, or . . . dialogue that fell somewhere in between . . . we cannot determine the extent

to which a fair and just hearing would have been thwarted by the defendant's absence or whether his presence has a reasonably substantial relation to the fullness of his opportunity to defend against the criminal charges." (Internal quotation marks omitted.) *State* v. *Bonner*, supra, 492–93.

In light of this standard, we can readily dispense with the defendant's contention that the record, as it presently stands, is adequate for appellate review. No matter how "context[ual]" a reading we apply to the colloquy previously recited, we are unable to glean: whether counsel alerted the court directly about this issue or spoke to the court clerk, who in turn alerted the court; whether any discussion of this matter occurred with the court off the record; the scope of any such discussion; and whether the defendant was in fact absent during any such discussion. Cf. *State* v. *Lopez*, supra, 271 Conn. 736 (record established that inquiry identified potential conflict of interest for defense counsel, namely, his conflicting roles of potential material witness in case and defendant's legal counsel, and inquiry consisted of single question and answer). The defendant's reliance on certain oblique statements by the court—"[t]he attorneys have brought a matter to the court's attention this morning which should be put on the record," "[l]et me flush that out a bit," and "[l]isten up, Mr. Walker, I just want to make sure you understand this"—do not shed light on these essential questions.

Under long-standing precedent, such deficiencies would preclude appellate review. See Practice Book § 61-10 (a) ("It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal."); see, e.g., *State* v. *Hazel*, 106 Conn. App. 213, 220–22, 941 A.2d 378 (deeming record inadequate to review claimed violation of right to be present at critical stage when it did not reflect scope of in chambers discussions), cert. denied, 287 Conn. 903, 947 A.2d 343 (2008). Therefore, we turn to the question of whether § 61-10 (b) shields the defendant from forfeiture of appellate review.

Practice Book § 61-10 (b), which took effect on January 1, 2013, provides: "The failure of any party on appeal to seek articulation pursuant to [Practice Book §] 66-5 shall not be the sole ground upon which the court declines to review any issue or claim on appeal. If the court determines that articulation of the trial court decision is appropriate, it may remand the case pursuant to [Practice Book §] 60-5 for articulation by the trial court within a specified time period. After remand to the trial court for articulation, the trial court may, in its discretion, require assistance from the parties in order to provide the articulation. Such assistance may

include, but is not limited to, supplemental briefs, oral argument and provision of copies of transcripts and exhibits." The commentary to § 61-10 explains that this subsection "was adopted to effect a change in appellate procedure by limiting the use of the forfeiture sanction imposed when an appellant fails to seek an articulation from the trial court pursuant to [Practice Book §] 66-5 with regard to an issue on appeal . . . . The adoption of subsection (b) is not intended to preclude the court from declining to review an issue where the record is inadequate for reasons other than solely the failure to seek an articulation, such as, for example, the failure to procure the trial court's decision pursuant to [Practice Book §] 64-1 (b) or the failure to provide a transcript, exhibits or other documents necessary for appellate review." Practice Book § 61-10, commentary.

It is self-evident that Practice Book § 61-10 (b) refers only to articulations. Our rules of practice, however, recognize two mechanisms for remedying deficiencies in a record for appellate review: articulation and rectification. See Practice Book § 66-5; see also Practice Book § 66-7 (review of such motions). Admittedly, prior to the enactment of Practice Book § 61-10 (b), our case law occasionally has failed to properly distinguish the two. See, e.g., *State* v. *Chambers*, supra, 296 Conn. 413–14 (deeming record inadequate to determine whether meeting in chambers was critical stage of prosecution in absence of articulation or rectification because only evidence in record concerning what transpired in chambers consisted of two passing references by trial court indicating merely that there had been such meeting); *State* v. *Stewart*, 255 Conn. 913, 763 A.2d 1039 (2000) (sua sponte order, in connection with grant of certification, "that the trial court articulate the facts concerning discussions, if any, among the state's attorney, defense counsel and the court during a charging conference, relative to the court's giving a 'no unfavorable inference' instruction to the jury in this matter"). Nonetheless, as we explain subsequently in this opinion, there is ample authority explaining the distinct function that each mechanism serves. Therefore, the threshold issue is whether an articulation or a rectification would be necessary to remedy the particular deficiency in the present case.

"It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Priest* v. *Edmonds*, 295 Conn. 132, 140, 989 A.2d 588 (2010); accord *Barnes* v. *Barnes*, 190 Conn. 491, 494, 460 A.2d 1302 (1983). In other words, an articulation elaborates upon, or explains, a matter that the trial

court decided. A motion for articulation "may not . . . be used to modify or to alter the substantive terms of a prior judgment  . . . ." (Internal quotation marks omitted.) *Bauer* v. *Bauer*, 308 Conn. 124, 131, 60 A.3d 950 (2013).

A motion for rectification, by contrast, is appropriate when the record must be modified or augmented in some fashion. "A motion for rectification can be used to make (1) additions to the record, (2) corrections to the record or (3) deletions from the record. The motion cannot be used to add new matters to the record that were not presented at trial." (Footnotes omitted.) C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (4th Ed. 2014) § 6-2:3.3; see, e.g., *Kalams* v. *Giacchetto*, 268 Conn. 244, 252–53, 842 A.2d 1100 (2004) (because plaintiff's request to charge was not contained in court file, court permitted rectification of record to reflect that plaintiff's request to charge had been presented to court in chambers); *State* v. *Floyd*, 253 Conn. 700, 730–32, 756 A.2d 799 (2000) (hearing on motion for rectification to determine whether state's witness had plea agreement providing consideration for testifying at defendant's trial at time of defendant's trial, in contravention to trial testimony); *State* v. *Lopez*, 235 Conn. 487, 491, 668 A.2d 360 (1995) (rectification to correct court reporter's purportedly inaccurate transcription of trial court's instruction); *Nair* v. *Thaw*, 156 Conn. 445, 455, 242 A.2d 757 (1968) (rectification could have been pursued to clarify off record agreement between parties); *State* v. *Benitez*, 122 Conn. App. 608, 614, 998 A.2d 844 (2010) (defendant should have availed himself of right to seek rectification of record regarding reconstruction of jury visit to crime scene).

It is clear that the deficiencies in the present record are not amenable to articulation, but rather should have been remedied by rectification. The record is not lacking the factual or legal basis upon which the trial court rendered any ruling or decision supporting the judgment. Rather, the record could have been augmented to include matters that occurred off the record. In such circumstances, rectification is the appropriate method of perfecting the record. See, e.g., *State* v. *Shashaty*, 251 Conn. 768, 785, 742 A.2d 786 (1999) (rectification sought to resolve whether matter of defendant being shackled during trial was discussed at in chambers conference), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000); *State* v. *David M.*, 109 Conn. App. 172, 176, 950 A.2d 599 (rectification sought to place on record defense counsel's statement to court in chambers that defendant wanted to withdraw his guilty pleas), cert. denied, 289 Conn. 924, 958 A.2d 154 (2008); *State* v. *Pelletier*, 85 Conn. App. 71, 76, 856 A.2d 435 (rectification sought was inadequate when it did not reflect whether defendant was informed by counsel about meeting in chambers, whether she waived her right to be present at meeting, and whether she con-

sented to court's decision in chambers), cert. denied, 272 Conn. 911, 863 A.2d 703 (2004); *In re Christopher G.*, 20 Conn. App. 101, 107, 564 A.2d 619 (1989) (defendant should have requested trial court to place on record in chambers discussion regarding basis for ruling or should have sought rectification), cert. denied, 213 Conn. 814, 569 A.2d 549 (1990).

In response to the state's contention that rectification was required, the defendant suggests that no distinction should be drawn between articulations and rectifications for purposes of Practice Book § 61-10 (b) because both mechanisms serve the same ultimate function and are addressed in tandem elsewhere in the rules of practice. We reject this suggestion. We generally deem it significant when a term that is omitted in one rule is included in related rules. See, e.g., *State* v. *Valedon*, 261 Conn. 381, 387, 802 A.2d 836 (2002); *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 440–41, 797 A.2d 1081 (2002). Although there may be no need to distinguish between the two mechanisms elsewhere in the rules, there is a logical basis to do so in § 61-10 (b). As the advisory committee on appellate rules explained in proposing this amendment, "the existing articulation system . . . often results in an unfair and inequitable finding that a party has forfeited a right to obtain appellate review for failure to seek an articulation from the trial court, there is a lack of certainty as to when articulation is needed, and the current system encourages trial judges to withhold the grounds for their decisions unless an articulation is requested." (Internal quotation marks omitted.) *Grimm* v. *Fox*, 303 Conn. 322, 332 n.12, 33 A.3d 205 (2012). Reasonable minds may differ as to whether language is ambiguous. An appellant may be convinced that the pertinent aspect of the record is unambiguous, only to have a reviewing court disagree. By contrast, it should be readily apparent when the pertinent portion of the record is inaccurate, incomplete or missing altogether, as in the present case. Thus, the concerns underlying this rule change do not support the defendant's position.

Moreover, as our previous discussion reflects, an essential feature of an articulation demonstrates that the rule change was not intended to provide a safety net for unpreserved claims. That an articulation *clarifies* the record presupposes that the factual or legal issue on which clarification is sought related to a matter decided by the trial court. It may be that, in fortuitous circumstances, a litigant who has failed to preserve a claim may be able to obtain an articulation because the factual or legal determination at issue also is relevant to a matter that was before the trial court. While such a fortuity may enable a litigant to obtain an adequate record to permit review of an unpreserved claim, it does not change the fundamental purpose of either an articulation or the limited exception under Practice Book § 61-10 (b).

Finally, we note that irrespective of the limits of Practice Book § 61-10, a reviewing court may, in the exercise of its authority under Practice Book § 60-2, order rectification of the record regarding an unpreserved claim when the interests of justice so demand. Absent an extraordinary case, however, the use of such power to remedy an inadequate record for review would plainly subvert Practice Book § 61-10 (a). We have not been asked to invoke such authority in the present case. Given that the deficiencies in this record should have been readily apparent, the present case would be an unlikely candidate for the exercise of such authority in any event.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.