STATE OF CONNECTICUT *v.* MICHAEL O. HAZEL
(AC 27732)

Flynn, C. J., and DiPentima and Robinson, Js.

Argued January 7—officially released March 4, 2008

*Stephanie L. Evans*, special public defender, for the appellant (defendant).

*Melissa Patterson*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Jason Germain*, assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Michael O. Hazel,[1] appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a) (2), assault in the first degree in violation of General Statutes § 53a-59 (a) (1), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a), criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a) and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1). On appeal, the defendant

---

[1] The defendant also was known as "Michael Jackson."

claims that (1) he was denied his constitutional right to be present at a critical stage of his prosecution and (2) his conviction of attempt to commit murder is legally inconsistent with his conviction of assault in the first degree and conspiracy to commit assault in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 2 a.m. on July 6, 2003, the victim, David Rogers, and his brother, Delton Rogers, went to Horace's Market in Waterbury to purchase beer. The victim had a stick in his hand as he entered the store. Walter Williams[2] asked if the victim planned to hit him with the stick, which the victim denied. Williams, agitated with the victim, exited the store in a hostile mood. After obtaining the beer, the victim left the store and saw his brother, Williams and a third person, later identified as the defendant, conversing. The victim explained that he had not threatened Williams with the stick. The victim and his brother shook hands with the defendant, while Williams remained unreceptive to the conciliatory efforts. The defendant and Williams then departed.

After a period of time had elapsed, the victim and his brother were walking to the victim's automobile. A motor vehicle driven at a high rate of speed approached them. After it came to a stop, the victim observed Williams and the defendant exit from the vehicle. The victim warned his brother that "they might have guns" as Williams walked toward him. The defendant then pulled a pistol from his waistband and shot the victim several times in the stomach, legs, buttocks and arm.[3] The victim heard Williams instruct the defendant also to shoot

---

[2] Walter Williams also was known as "Slugger."

[3] As a result of these events, the victim's gallbladder had to be removed. Additionally, the victim suffered from a hole in his liver and a shattered bone in his arm. Several bullets could not be removed and remain in the victim's body. Randolph E. Edwards, a physician who treated the victim, described these injuries as life threatening.

Delton Rogers, but the defendant focused his attack solely on the victim. The defendant and Williams then drove off. Delton Rogers transported the victim to a hospital.

The defendant subsequently was arrested, tried and convicted. The court sentenced him to a total effective term of twenty years incarceration and five years special parole. This appeal followed. Additional facts will be set forth where necessary.

I

The defendant first claims that he was denied his constitutional right to be present at a critical stage of his prosecution. Specifically, he argues that it was structural error[4] for the court to conduct a hearing in chambers regarding a possible conflict of interest involving defense counsel without his presence. The state counters that the record is inadequate to review this claim. We agree with the state.

The following additional facts are necessary for our discussion. Prior to the empanelment of the jury and the evidentiary phase of the trial, the court, referring

_____

[4] "In considering the nature of a claimed constitutional violation, although typically such violations are reviewed for harmless error, there is a limited class of violations that we review for structural error. Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected. . . . These cases contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. . . . Such errors infect the entire trial process . . . and necessarily render a trial fundamentally unfair . . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." (Internal quotation marks omitted.) *State* v. *Dalton*, 100 Conn. App. 227, 230 n.3, 917 A.2d 613, cert. denied, 282 Conn. 913, 924 A.2d 139 (2007). Because the defendant failed to satisfy the first prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), review for structural error is not necessary. See *State* v. *Dalton*, supra, 230 n.3.

to a discussion that had taken place earlier in chambers, stated: "Okay. Counsel, just the matter that we spoke about earlier. The procedure today, first of all, we will speak to the jurors who potentially may have problems participating . . . . I will inquire of the individuals. I will ask counsel if they have any additional questions. I will then make a determination as to whether or not one or both of them would be able to participate on the jury panel. If we have a situation after the inquiry when we have only one alternate, we do have a panel upstairs. From that panel, we will select an additional alternate. Each party will have one additional challenge to be used, if we need to select that additional alternate. Once that alternate is selected, we will then immediately proceed to the evidentiary portion of the matter here. I have indicated to counsel, based on the stipulation that was presented to the court, that when the panel is sworn after completion of the state's evidence and as part of the jury charge, I will read an explanation of the stipulation, with respect to the admission by the defendant by the parties that he has been previously convicted of a felony, to indicate to the panel that that admission, that stipulation is admitted solely for the purpose to prove the element—the specific element of the two crimes that involve the prior felony record. . . . [Defense Counsel]. There is one other matter on the record related to one of the witnesses that you need to comment on; is that correct?"

Counsel for the defendant, attorney Michael P. Gannon, then stated: "Yes, Your Honor. For record, the victim in this case . . . I don't know the exact date, but it was a while ago, came into my law office and asked to receive a power of attorney. He asked for the form that we have [for a] power of attorney. I gave him or my office gave him—it might have been me—gave him a form of power of attorney. We do not represent him, we just gave him a power of attorney form to fill

out on his own. I told that to my client, and my client has no problem with me representing him. I don't think there is a conflict of interest in this case. Okay, Mr. Hazel, sir, do you understand the question here?" The defendant responded in the affirmative. The court then inquired if the defendant had "any problem with attorney Gannon continuing his representation?" The defendant answered in the negative. The court asked if the defendant believed that there was any type of conflict, and the defendant stated, "[n]o sir."

The court inquired if the prosecutor had any comment regarding this matter. The prosecutor responded: "No, Your Honor. When I found this out from the victim, I brought it to the attention of Mr. Gannon; that's when I brought it to the attention of Your Honor. [But in] the interest of caution, [the victim] did not say he actually obtained or hired Mr. Gannon, and it was the same situation. He went there for a power of attorney. The conversation, I believe afterward, when he picked up the form, was, is, you are representing the defendant in this case, the person who shot me; that was the end of the conversation. But in the interest of caution, we brought it before Your Honor." The court then asked if there was anything else that needed to be placed on the record, and defense counsel responded in the negative.

The defendant concedes that this claim is unpreserved and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant may prevail on unpreserved claims only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to

demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 359–60, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). "In the absence of any one of the four *Golding* conditions, the defendant's claim will fail. . . . The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Kirk R.*, 271 Conn. 499, 506 n.12, 857 A.2d 908 (2004).

We now set forth the legal principles germane to the defendant's claim. "The sixth amendment to the United States constitution, as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution both guarantee a defendant the right to effective assistance of counsel in a criminal proceeding. . . . Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. . . . This right applies not only to the trial itself, but to any critical stage of a criminal proceeding." (Citations omitted; internal quotation marks omitted.) *State* v. *Cruz*, 41 Conn. App. 809, 811, 678 A.2d 506, cert. denied, 239 Conn. 908, 682 A.2d 1008 (1996); see also *State* v. *Rodriguez*, 93 Conn. App. 739, 745, 890 A.2d 591, appeal dismissed, 281 Conn. 817, 917 A.2d 959 (2007). Simply put, "[a] defendant's right to be present . . . is scarcely less important to the accused than the right of trial itself." (Internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 636, 916

A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007).

The defendant argues that the conversation that occurred in chambers constituted a critical stage of the proceedings. In *State* v. *Sam*, 98 Conn. App. 13, 23, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006), we noted that "an in camera inquiry regarding a potential conflict of interest *may* constitute a critical stage of a prosecution at which time a defendant has a constitutional right to be present." (Emphasis added.) Nevertheless, it does not follow that *all* in-chambers discussions constitute a critical stage of the prosecution. In *State* v. *Lopez*, 271 Conn. 724, 859 A.2d 898 (2004), our Supreme Court stated that "[i]n judging whether a particular segment of a criminal proceeding constitutes a critical stage of a defendant's prosecution, courts have evaluated the extent to which a fair and just hearing would be thwarted by [the defendant's] absence or whether his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." (Internal quotation marks omitted.) Id., 732; see also *State* v. *Holbrook*, 97 Conn. App. 490, 494–95, 906 A.2d 4, cert. denied, 280 Conn. 935, 909 A.2d 962 (2006); *State* v. *McNellis*, 15 Conn. App. 416, 431–32, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). It further noted that a defendant may be afforded the right either to object or to waive an objection to his absence from a conference held in chambers if the existence of such a conference subsequently is placed on the record. *State* v. *Lopez*, supra, 737 n.13. In other words, in order to determine whether the in-chambers discussion constituted a critical stage of the proceedings, it is imperative that the record reveal the scope of discussion that transpired.

In the present case, the record is unclear as to the extent of the discussions that occurred in chambers, outside of the presence of the defendant. Neither the

parties nor the court described or recounted on the record, with any detail, what had occurred in chambers. We therefore cannot determine the scope of this discussion. Instead, we are left to speculate as to whether the conversation consisted of the court and counsel conducting an extensive discussion as to Gannon's potential conflict of interest at one end of the spectrum or, at the opposite end, a brief comment to the court that there was a matter that needed to be placed on the record, or a dialogue that fell somewhere in between. As a result, we cannot determine the extent to which a fair and just hearing would have been thwarted by the defendant's absence or whether his presence has a reasonably substantial relation to the fullness of his opportunity to defend against the criminal charges.

The defendant failed to move for an articulation or rectification of the record. See *State* v. *Saucier*, 283 Conn. 207, 222 n.11, 926 A.2d 633 (2007). "When our rules of practice are not followed, and the record is not rectified, we are left to guess or speculate as to the existence of a factual predicate." (Internal quotation marks omitted.) *State* v. *Bermudez*, 95 Conn. App. 577, 585, 897 A.2d 661 (2006). Our Supreme Court recently reiterated the fundamental point that "[i]t is incumbent upon the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by [any appellate court] respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 583–84, 916 A.2d 767 (2007); see also *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007) (for any *Golding* claim, incumbent on defendant to take necessary steps

to sustain burden of providing adequate record for appellate review); *State* v. *Brunetti*, 279 Conn. 39, 63, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). We conclude, therefore, that the record is inadequate for our review of this claim, and, accordingly, the defendant has failed to satisfy the first prong of *Golding*.

## II

The defendant next claims that his conviction of attempt to commit murder is legally inconsistent with his conviction of assault in the first degree and conspiracy to commit assault in the first degree. Specifically, he argues that it was not possible to simultaneously possess the requisite mental state for attempt to commit murder, that is, the intent to cause the death of another person, and assault in the first degree and conspiracy to commit assault in the first degree, that is, to intend to cause serious physical injury to another person. We are not persuaded.

At the outset, we note that the defendant's claim is unpreserved, and, therefore, he seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We review this claim because the record is adequate and the claim is of constitutional magnitude. See *State* v. *Mooney*, 61 Conn. App. 713, 719, 767 A.2d 770, cert. denied, 256 Conn. 905, 772 A.2d 598 (2001); *State* v. *Jones*, 44 Conn. App. 476, 488, 691 A.2d 14, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997). We conclude, however, that this claim fails to satisfy the third *Golding* prong.

We now set forth the legal principles and standard of review applicable to this issue. "The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements. Such verdicts are legally inconsistent if the existence of the essential elements for one offense negates the existence of the essential elements for

another offense of which the defendant also stands convicted." (Internal quotation marks omitted.) *State* v. *Mourning*, 104 Conn. App. 262, 269, 934 A.2d 263, cert. denied, 285 Conn. 903, 938 A.2d 594 (2007); *State* v. *Soto*, 59 Conn. App. 500, 504, 757 A.2d 1156, cert. denied, 254 Conn. 950, 762 A.2d 906 (2000). Furthermore, "[t]he resolution of a claim of inconsistent verdicts presents a question of law. . . . Our review is therefore plenary." (Internal quotation marks omitted.) *State* v. *Mourning*, supra, 269.

The defendant relies primarily on *State* v. *King*, 216 Conn. 585, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991). In that case, our Supreme Court concluded that a conviction of attempt to commit murder and assault in the first degree in violation of § 53a-59 (a) (3) was legally and logically inconsistent, thereby depriving the defendant of due process. Id., 592. Specifically, the court explained: "The intent to cause death required for a conviction of attempted murder, by definition, therefore, necessitated a finding that the defendant acted with the conscious objective to cause death. *The reckless conduct necessary to be found for a conviction of assault under the subsection charged, however, required a finding that the defendant acted without such a conscious objective.* . . . To return verdicts of guilty for both attempted murder and assault in the first degree, therefore, the jury would have had to find that the defendant simultaneously acted intentionally and recklessly with regard to the same act and the same result, i.e., the injury to the victim. . . . *As is evident, however, the statutory definitions of intentionally and recklessly are mutually exclusive and inconsistent. Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result.* . . . Therefore, the transgression that caused the victim's injuries was either intentional

or reckless; it could not, at one and the same time, be both. . . . Where a determination is made that one mental state exists, to be legally consistent the other must be found not to exist. . . . By no rational theory could the jury have found the defendant guilty of both crimes. . . . Logically then, the jury verdicts convicting the defendant of two offenses each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction cannot stand." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 593–94.

The defendant in *King* was charged with violating the recklessness subsection of the assault in the first degree statute. Id., 586; see General Statutes § 53a-59 (a) (3).[5] In the present case, however, the state charged the defendant with violating § 53a-59 (a) (1), which provides in relevant part: "A person is guilty of assault in the first degree when . . . *With intent to cause serious physical injury to another person,* he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."[6]

---

[5] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[6] The defendant also was charged with conspiracy to commit assault in the first degree. "To obtain a conviction for conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (1), as charged, the state bore the burden of proving beyond a reasonable doubt that the defendant (1) intended that conduct constituting the crime of assault in the first degree be performed, (2) agreed with one or more persons to engage in or cause the performance of such conduct and (3) that any one of those persons committed an overt act in pursuance of such conspiracy." *State* v. *Wells,* 100 Conn. App. 337, 347, 917 A.2d 1008, cert. denied, 282 Conn. 919, 925 A.2d 1102 (2007). For the purposes of our analysis in this case, we consider the mental state required for the inchoate offense of conspiracy to commit assault in the first degree and the underlying substantive offense of assault in the first degree to be the same in determining whether the conviction of those crimes was legally inconsistent with attempt to commit murder.

(Emphasis added.) We agree with the state's claim that *King* is distinguishable from the facts of the present case and therefore does not control the resolution of this issue.

We find guidance from our Supreme Court's decision in *State* v. *Williams*, 237 Conn. 748, 679 A.2d 920 (1996), after remand, 44 Conn. App. 231, 689 A.2d 484, cert. denied, 240 Conn. 918, 692 A.2d 815 (1997). In that case, the defendant was charged with attempt to commit murder and assault in the first degree in violation of § 53a-59 (a) (1). Id., 749. The defendant had struck the victim eight times in the head with a baseball bat, causing serious head injuries. Id., 751. The jury found the defendant guilty of attempt to commit murder and assault in the first degree. Id., 752. The defendant appealed, claiming that the trial court's instructions improperly permitted the jury to render an inconsistent guilty verdict. Id.

The court stated the issue as "whether the intent to cause death and the intent to cause serious physical injury are mutually exclusive as a matter of law." Id., 753. In concluding that such mutual exclusivity is not to be presumed, our Supreme Court explained: "Although §§ 53a-54a and 53a-59 (a) (1) require the same mental state, namely, a specific intent . . . the particular intents required to violate these statutes are not the same. For each intent, a distinct conscious objective is sought. A verdict of guilty of attempted murder requires a finding of the specific intent to cause death. . . . A verdict of guilty of assault in the first degree in violation of § 53a-59 (a) (1), in contrast, requires a finding of the specific intent to cause serious physical injury. . . .

"The defendant's argument founders on the mistaken presumption that one who intends to kill a person may not also intend to cause serious physical injury to that person. *We can perceive no logical reason to preclude,*

*as a matter of law, the simultaneous possession of these intents by a defendant toward the same victim. It is entirely consistent and reasonable, under the facts of a particular case, for a jury to find that a defendant intended to inflict serious wounds upon a victim while also intending to cause that victim's death. A defendant can intend both to cause the victim a serious physical injury and to kill the victim.* No temporal separation is required for the intent, but obviously one is required for the result. A possible factual scenario would have a defendant intending to kill a person but first causing serious physical injury or disfigurement, so as to make the victim suffer before dying. The intent is simultaneous, as the conscious objective to cause the requisite results is simultaneous, while the results themselves are separated by time." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 754–55. Finally, we note that the *Williams* court expressly distinguished *King.*[7]

We conclude that the present case is controlled by *Williams* and those cases applying *Williams.* See *State v. Mourning*, supra, 104 Conn. App. 269–71; *State v. Blocker*, 46 Conn. App. 734, 736–38, 700 A.2d 1186, cert. denied, 243 Conn. 946, 704 A.2d 799 (1997); *State v. Dukes*, 46 Conn. App. 684, 686–89, 700 A.2d 119 (1997); *State v. Jones*, supra, 44 Conn. App. 488; *State v. Campfield*, 44 Conn. App. 6, 18–19, 687 A.2d 903 (1996), cert.

---

[7] "The holding in *King* was premised on the conclusion that, because a defendant cannot act recklessly and intentionally at the same time toward the same victim, a guilty verdict based on a finding that a defendant acted with recklessness is inconsistent with a guilty verdict based on a finding that the defendant acted intentionally. . . . That is not this case. The trial court in the present case did not instruct the jury that it could find that the defendant simultaneously had acted recklessly and intentionally toward the victim. Rather, the trial court instructed the jury that it could find that the defendant had intended to inflict serious physical injury upon the victim and, at the same time, intended to cause her death. *King*, therefore, is inapposite." (Citation omitted.) *State v. Williams*, supra, 237 Conn. 756–57.

denied, 240 Conn. 916, 692 A.2d 814, cert. denied, 522 U.S. 823, 118 S. Ct. 81, 139 L. Ed. 2d 39 (1997); see also *State* v. *Hinton*, 227 Conn. 301, 318, 630 A.2d 593 (1993) ("[i]t is clear that an assault in violation of § 53a-59 [a] [1] and [2] would be consistent with an attempted murder count in violation of §§ 53a-49 and 53a-54a"). As we stated in *Mourning*, "gradations of specific intent for purposes of a claim of legal inconsistency represent a distinction without a difference." *State* v. *Mourning*, supra, 271. In the present case, it was not inconsistent for the defendant to have conspired to cause a serious physical injury, to have intended to cause a serious physical injury and to have intended to cause death. As our Supreme Court has noted, "under some circumstances, the intent to cause death and the intent to cause serious physical injury may be possessed simultaneously." *State* v. *Murray*, 254 Conn. 472, 481, 757 A.2d 578 (2000). In other words, the existence of the specific intent to cause death does not negate the existence of the specific intent to cause serious physical injury.

We conclude that the intent required for a conviction of assault in the first degree, in violation to § 53a-59 (a) (1), conspiracy to commit assault in the first degree in violation of § 53a-59 (a) (1) and attempt to commit murder are not contradictory; therefore, the defendant's claim of legal inconsistency must fail.

The judgment is affirmed.

In this opinion the other judges concurred.