******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL HAZEL *v.* COMMISSIONER OF
CORRECTION
(AC 39289)

Sheldon, Bright and Beach, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of attempt to commit
    murder, assault in the first degree, conspiracy to commit assault in the
    first degree, criminal possession of a firearm, carrying a pistol or revolver
    without a permit, and criminal possession of a pistol or revolver, sought a
    writ of habeas corpus, claiming that his trial counsel provided ineffective
    assistance by failing to discover that the petitioner's codefendant, W,
    had resolved his related criminal case and was available to testify at
    the petitioner's criminal trial without fear of self-incrimination, and by
    failing to present W's testimony. The habeas court rendered judgment
    denying the petition, from which the petitioner, on the granting of certifi-
    cation, appealed to this court. *Held* that the habeas court properly
    concluded that the petitioner was not denied the effective assistance
    of counsel at his criminal trial, as he failed to prove that he was preju-
    diced by his trial counsel's performance in not presenting W's testimony,
    there not having been a reasonable probability that, had the petitioner's
    trial counsel called W to testify, the outcome of the petitioner's trial
    would have been different; there was considerable evidence against
    the petitioner, including two witnesses who testified that they saw the
    petitioner shoot the victim, the habeas court found that W lacked credi-
    bility and his testimony would not have been helpful to the petitioner,
    especially given that W, only months before, had admitted to the judge
    in his own plea canvass that the petitioner was the shooter and testified,
    at the habeas trial, to a factual scenario that was completely different
    from that which served as the basis for his conviction when he entered
    a straight guilty plea that implicated the petitioner as the shooter.

Argued December 4, 2017—officially released February 6, 2018

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland, where the court, *Oliver, J.*, rendered judgment
denying the petition; thereafter, the court granted the
petition for certification to appeal, and the petitioner
appealed to this court; subsequently, the court, *Oliver,
J.*, denied the petitioner's motion for articulation.
*Affirmed.*

*Michael W. Brown*, for the appellant (petitioner).

*Melissa Patterson*, assistant state's attorney, with
whom, on the brief, were *Maureen Platt*, state's attor-
ney, and *Marc G. Ramia*, senior assistant state's attor-
ney, for the appellee (respondent).

*Opinion*

BRIGHT, J. The petitioner, Michael Hazel, appeals following the granting of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erred when it concluded that his right to the effective assistance of counsel was not violated during his criminal trial. We affirm the judgment of the habeas court.

The following facts, as set forth by this court in the petitioner's direct appeal, reasonably could have been found by the jury at the petitioner's criminal trial. "At approximately 2 a.m. on July 6, 2003, the victim, David Rogers, and his brother, Delton Rogers, went to Horace's Market in Waterbury to purchase beer. The victim had a stick in his hand as he entered the store. Walter Williams asked if the victim planned to hit him with the stick, which the victim denied. Williams, agitated with the victim, exited the store in a hostile mood. After obtaining the beer, the victim left the store and saw his brother, Williams and a third person, later identified as the [petitioner], conversing. The victim explained that he had not threatened Williams with the stick. The victim and his brother shook hands with the [petitioner], while Williams remained unreceptive to the conciliatory efforts. The [petitioner] and Williams then departed.

"After a period of time had elapsed, the victim and his brother were walking to the victim's automobile. A motor vehicle driven at a high rate of speed approached them. After it came to a stop, the victim observed Williams and the [petitioner] exit from the vehicle. The victim warned his brother that 'they might have guns' as Williams walked toward him. The [petitioner] then pulled a pistol from his waistband and shot the victim several times in the stomach, legs, buttocks and arm. The victim heard Williams instruct the [petitioner] also to shoot Delton Rogers, but the [petitioner] focused his attack solely on the victim. The [petitioner] and Williams then drove off. Delton Rogers transported the victim to a hospital." (Footnotes omitted.) *State* v. *Hazel*, 106 Conn. App. 213, 215–16, 941 A.2d 378, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008).

After a jury trial, the petitioner was convicted of attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a) (2), assault in the first degree in violation of General Statutes § 53a-59 (a) (1), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a), criminal possession of a firearm in violation of General Statutes (Rev. to 2003) § 53a-217 (a) (1), carrying a pistol or revolver without a permit in violation of General Statutes (Rev. to 2003) § 29-35 (a) and criminal possession of a pistol or revolver in violation of General Statutes (Rev. to 2003) § 53a-217c (a) (1). Id., 214. The

court sentenced the petitioner to a total effective sentence of twenty years to serve, followed by five years of special parole.[1] Id., 216. This court affirmed the judgment of conviction on direct appeal. Id., 227.

On April 7, 2015, the petitioner filed an amended petition for a writ of habeas corpus, claiming, in relevant part, that his criminal trial counsel, Attorney Michael Gannon, had provided ineffective assistance during the petitioner's criminal trial. The petitioner alleged, inter alia, that Gannon had been ineffective for failing to discover that Williams, the petitioner's codefendant, had resolved his related criminal case and, therefore, was available to testify at the petitioner's criminal trial without fear of self-incrimination, and, ultimately, that Gannon was ineffective for failing to present Williams' testimony.

The court conducted a habeas trial on January 11, 2016, wherein the petitioner presented witnesses, including Gannon and Williams. The petitioner also testified on his own behalf. The testimony and evidence regarding those witnesses, as it relates to the issue raised on appeal, is summarized as follows.

Gannon testified that when he was involved in matters that were headed to trial, he would have an investigator, either licensed or not, assist with those cases. He also conducted a lot of the investigating himself. Gannon, however, had no specific memory of the investigation that was undertaken in the petitioner's case. When asked whether he remembered not calling any witnesses during the trial, Gannon did not recall specifically; he did recall, however, that he believed there was reasonable doubt in the case. Gannon also agreed that the theory of defense was that, although the petitioner was present at the shooting, he was not the shooter; "he wasn't involved, and he didn't pull the trigger . . . ." When discussing the petitioner's sister,[2] who also had been present at the scene of the shooting but who contended that the petitioner was not the shooter, Gannon explained that he did not call her to testify at trial because she had placed the petitioner at the scene with a gun in his hand, and that such testimony from her "would be devastating." Gannon also agreed that there were other witnesses at the scene of the shooting who also had stated that the petitioner had a gun in his hand.

When specifically asked about whether Williams had been available to testify at the petitioner's trial, Gannon testified that Williams had not been available to testify because he had been charged with a related crime and would plead the fifth amendment if called to testify. Gannon then was asked if that was the reason he did not call Williams to testify, and Gannon stated: "I don't know what the reason was, but that was probably one of the reasons." In response to a question concerning whether there would have been a reason not to present

testimony from Williams, who would have stated that someone else had been the shooter, Gannon replied: "Not at all." When asked whether such testimony could have been harmful, Gannon stated: "Depends on if he was believed by the jury or not."

Williams testified that he pleaded guilty to charges related to the petitioner's underlying case in April, 2005. He testified that, on the night of the shooting, he and the petitioner had gone to a store to get medicine for the petitioner's wife, and the petitioner went inside the store. The victim was outside the store "having arguments and fights with different individuals going into the store," and he had a stick in his hand. Williams stated that, after he went into the store, he witnessed the petitioner having words with the victim's brother. When the victim went inside the store, the argument ended; Williams and the petitioner then left to bring the medicine home. Once they arrived at the petitioner's home, however, they realized that there was no medicine inside the package, and they returned to the store. Williams stated that he and the victim, who was swinging a stick or a two-by-four, then had words while the petitioner went into the store to deal with the medicine issue. He then stated that "[w]ithin five minutes or ten minutes of that, gunfire started going off." Williams did not know what was happening, and he ran toward the petitioner's car. On his right, he saw a man "with dreads that was doing the shooting." The petitioner then joined Williams in the car, and they drove away.

Williams also testified that he was questioned by the police the following day. He stated that the officers told him that he was being arrested in relation to the shooting and that the petitioner had shot the victim. Williams then testified that the petitioner "didn't have a gun. Not one time did he brandish a gun. At the same time we [were] getting inside the car, there was still gunfire going off. So, he didn't have a gun."[3]

The petitioner's attorney asked Williams whether he had spoken to Gannon or an investigator from Gannon's office about this case, and Williams said that he had spoken with Gannon early in the case but that he had never spoken to an investigator. He also testified that he had told Gannon his version of events. Williams acknowledged that, by the time of the petitioner's criminal trial in 2005, his own criminal case had been resolved with a guilty plea to charges of conspiracy to commit assault in the first degree and accessory to commit assault in the first degree; he was living in Manhattan and would have testified for the petitioner if he had been asked. Williams explained that he initially had been offered a twenty-five year prison sentence, but that, after negotiations, it was bargained down to no jail time; "I took an exit and I ran." A transcript of Williams' guilty plea hearing, which was in evidence at the habeas trial, reveals that Williams entered a straight

guilty plea in exchange for a total effective sentence of five years incarceration, execution suspended, with five years probation.

The respondent, the Commissioner of Correction, asked Williams if he was present when the prosecutor related the factual basis for his charges, and he acknowledged that he had been present. When the respondent asked if he recalled the prosecutor indicating "a factual basis that [the petitioner] pulled out a .45 caliber gun and shot [the victim]," Williams responded, "no sir." The respondent also asked Williams if he recalled the court asking if the facts set forth by the prosecutor essentially were correct, and he stated that he could not remember. To refresh his recollection, the respondent provided him with a copy of the transcript of his plea canvass. After reading it, Williams acknowledged that he had confirmed that the facts set forth by the prosecutor essentially were correct, and that he had answered yes when the court had asked him if that was how the crime had been committed.

The petitioner also testified at his habeas trial. He stated that he spoke with Gannon only at his court appearances and that he would write things down so that he could discuss them with Gannon when he went to court. Gannon never discussed trial strategy with him. He also stated that he did not meet with any investigators from Gannon's office and that he was unaware whether an investigator had worked on his case. The petitioner testified that there were many questions that he wanted Gannon to ask of the state's witnesses but that Gannon did not ask them. He stated that Gannon did, however, tell him that those witnesses would be recalled later so that Gannon could "ask them questions from our point of view." The petitioner also stated that he "found out that the guy . . . with the dreads . . . had got[ten] arrested . . . that night or the next day and they found a gun on him matching the one that was used." He testified further that he told Gannon to "call this guy, get the gun or ballistics on it or something," and that Gannon told him "don't worry." As to Williams, the petitioner testified that Gannon told him that he would talk to Williams. The petitioner was aware that Williams was not incarcerated, but he did not know how Williams' case was proceeding. The petitioner explained that he did not talk to Williams himself because he "didn't want it to be said that [they] rehearsed anything or . . . [that he] told anybody to say anything . . . ." The petitioner, therefore, asked his wife to give Gannon Williams' telephone number. At the time, Williams was living in New York with the petitioner's sister.

During cross examination, the respondent asked the petitioner to clarify whether he had "discuss[ed] potential witnesses with Attorney Gannon." The petitioner responded: "Not before the trial. No." The respondent

also asked about witness statements that the petitioner may have seen, and the petitioner stated that he received a copy of all witness statements at trial, as well as all of the police reports.

After trial, the habeas court determined that Gannon's investigation was factually and legally sufficient under constitutional standards. The court also found that the petitioner and Williams were not credible witnesses, and that Williams' testimony would not have been helpful to the petitioner at his criminal trial. The court concluded, therefore, that the petitioner had failed to establish that Gannon's assistance was ineffective, and it denied the petition. The court thereafter granted the petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

The petitioner claims that the habeas court committed error when it concluded that he had failed to establish that his right to the effective assistance of counsel had been violated by Gannon's failure to present the testimony of Williams. We are not persuaded.

We begin by setting forth the applicable standard of review and the law governing ineffective assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied. . . . *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 470, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, U.S.    , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013). Consequently, [i]t is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier. . . . *Valeriano* v. *Bronson*, 209 Conn. 75, 86, 546 A.2d 1380 (1988); see also *Strickland* v. *Washington*, supra, 697 (a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant). . . . *Small* v. *Commissioner of Correction*, 286 Conn. 707, 713, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008)." (Emphasis omitted; internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 605–606, 103 A.3d 954 (2014).

The petitioner contends that Williams' testimony would have contradicted the testimony of the state's witnesses who had identified the petitioner as the shooter. The petitioner explains: "Trial counsel was deficient because he failed to investigate and determine the status of Walter Williams' case before the petitioner's criminal trial. If counsel had done so, he would have discovered that Williams had resolved his case and that he was available to testify that the petitioner was not the shooter. The petitioner was prejudiced by counsel's deficient performance. There is a reasonable probability that—but for [the failure of] the petitioner's [counsel] . . . to present the testimony of Walter Williams—the outcome of the criminal trial would have been different."

In rejecting the petitioner's claim regarding the failure to call Williams as a witness, the habeas court did not explicitly state which prong of the *Strickland* test the petitioner failed to satisfy. Nevertheless, it is clear from the court's discussion of the evidence that the petitioner failed to prove that the failure to present Williams prejudiced him. The habeas court found that Williams' credibility was lacking, and it opined that the state's cross-examination revealed additional credibility problems Williams would have had as a defense witness had he been called to testify at the petitioner's criminal trial. Specifically, the court explained: "[Williams] entered a 'straight' guilty plea to crimes with a factual basis directly implicating the petitioner as the shooter of [the victim]. Now, a number of years later . . . [Williams] testifies to a factual scenario completely different from that which served as the basis for his conviction. The court does not find that [Williams'] testimony would have been particularly helpful to the petitioner at trial." The court also noted correctly that the failure of defense counsel to call a witness cannot constitute ineffective assistance without, at a minimum, a showing that the

witness' testimony would be helpful. The habeas court concluded that the petitioner failed to make such a showing. On the basis of the habeas court's findings, including its credibility determinations, we agree.

"In order to prevail on a claim of ineffectiveness of counsel, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . [T]he question is whether there is a reasonable probability that, absent the [alleged] errors, the [fact finder] would have had a reasonable doubt respecting guilt. . . .

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 688–89.

The case against the petitioner was not weak. During his criminal trial, two witnesses testified that they saw the petitioner shoot the victim. The victim, although being unable to positively identify the petitioner as the shooter, testified that the shooter was the man who was with Williams. Had Williams been called as a witness, he would have been confronted with his guilty plea and the underlying facts he acknowledged as true, which only would have served to corroborate the testimony of these witnesses. Furthermore, we must accept the habeas court's conclusion that Williams' testimony that someone other than the petitioner was the shooter was not credible.

Here, even if we assume, without deciding, that Gannon's performance was deficient for failing to know that Williams had resolved his case and was prepared to testify that the petitioner did not shoot the victim, our standard is clear: "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . To satisfy the second prong of *Strickland* . . . the petitioner must establish that, as a result of his trial counsel's deficient

performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different.” (Citations omitted; internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 522, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

On the basis of the foregoing, we are not persuaded that there is a reasonable probability that, had Gannon called Williams to testify, the outcome of the petitioner's trial would have been different. There was considerable evidence against the petitioner, and Williams, only months before, had admitted to the judge in his own plea canvass that the petitioner was the shooter. The habeas court also found that Williams lacked credibility. Under the circumstances, we are confident that the outcome of the petitioner's criminal trial would not have been different if Williams had been called to testify. The habeas court, therefore, properly concluded that the petitioner was not denied the effective assistance of counsel at his criminal trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On October 8, 2011, pursuant to a stipulated judgment in the petitioner's previous habeas petition, the habeas court rendered judgment reducing the executed portion of the petitioner's sentence to nineteen years.

[2] The petitioner's sister and Williams have children together.

[3] Williams also stated that he told the police that the petitioner was not the shooter.